UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ELIZABETH TRUJILLO, individually and as administrator *ad litem* for the estate of Joshua Kersey, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )  No. 3:24-cv-01198 |
| OFFICER COLE RANSEEN, *et al.*, | )<br>) |
| Defendants. | ) |

# MEMORANDUM OPINION

This action arises from the October 9, 2023 shooting death of Joshua Kersey after Metropolitan Nashville Police Department ("MNPD") officers responded to a 911 call from his mother, Plaintiff Elizabeth Trujillo. Before the Court is a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by MNPD Officer Cole Ranseen and the Metropolitan Government of Nashville and Davidson County ("Metro"). (Doc. No. 22). Defendants' Motion is fully briefed and ripe for decision. (See Doc. Nos. 23; 34; 34-1; 36). For the following reasons, the Motion will be granted in part and denied in part.

## I. LEGAL STANDARDS

The Court begins with the legal standards because they dictate what the Court may and may not consider in ruling on Defendants' Rule 12(b)(6) motion.

### A. Rule 12(b)(6)

A defendant may move under Rule 12(b)(6) to dismiss a case for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the Complaint must include a "short and plain statement of the claim showing that the pleader is

entitled to relief." Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)).

When determining whether the Complaint meets this standard, the Court must accept the factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). "While the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions'" or "'a formulaic recitation of a cause of action's elements[.]'" Blackwell, 979 F.3d at 524 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

B.     Video Exhibits

The Court "ordinarily stay[s] within the four corners of the complaint to determine whether the plaintiff has stated a plausible claim for relief" under Rules 8 and 12(b)(6). Bell v. City of Southfield, 37 F.4th 362, 364 (6th Cir. 2022) (citation omitted). As part of their motion, however, Defendants filed body camera videos from Officer Ranseen and two other officers that captured the entire incident in question. (See Defendants' Manual Exhibit 1 ("Video")[1]). Both parties cite to Officer Ranseen's video in their respective briefs. (See Doc. Nos. 23 at 2–5; 34-1 at 5). Courts have relied on bodycam video evidence, to determine if qualified immunity is appropriate when,

---

[1] Defendants' Exhibit 1 is a copy of Officer Ranseen's October 9, 2023 body camera video that Defendants filed manually with the Clerk's office. (See Doc. Nos. 24, 27). Citations to the video's timestamp reflect the approximate start time of an event.

"it covers the entire incident at issue and both parties urge the Court to consider it." Thomas v. McCabe, 2023 WL 8275973, at *2 (E.D. Mich. Nov. 30, 2023) (citation, internal quotation marks, and alterations omitted). Given that both parties rely on the body camera footage, "it makes little sense to waste time and effort by ignoring the videos' contents." Bell, 37 F.4th at 364. Accordingly, the Court has considered the officers' body camera videos in ruling on Defendants' motion for qualified immunity.

"That said, [the Court's] use of the videos is limited at this stage." Bell, 37 F.4th at 364. The Court can consider the body camera footage over the Complaint *only* if the "videos are clear and blatantly contradict or utterly discredit the plaintiff's version of events." Hodges v. City of Grand Rapids, 139 F.4th 495, 506 (6th Cir. 2025) (citation omitted). "This is because if a video clearly depicts a set of facts contrary to those alleged in the complaint, this makes a plaintiff's allegations implausible." Saalim, 97 F.4th at 1002 (citation omitted). "But when the video does not blatantly contradict or utterly discredit the complaint," the Court must "rely on the allegations in the" Complaint alone and must accept the plaintiff's version as true. Id. (citations omitted); Bell, 37 F.4th at 364. At the motion to dismiss stage, the plaintiff does not bear the burden of telling a "complete story of what happened on the night [in] question"; she just needs to allege "a *plausible* one." Hodges, 139 F.4th at 506.

II. FACTUAL ALLEGATIONS

A fair reading of the Complaint (Doc. No. 1) sets forth the following allegations.

On October 9, 2023, Elizabeth Trujillo ("Plaintiff") called 911 for assistance because her son Mr. Kersey "was experiencing an emotional crisis because of his severe mental problems." (Doc. No. 1 ¶¶ 7–8). Plaintiff told the 911 operator that Mr. Kersey was unarmed. (Id. ¶ 7). When Metropolitan Nashville Police Department ("MNPD") Officer Ranseen and other officers arrived at the scene, Plaintiff again informed them that Mr. "Kersey was not armed and that there were no

weapons in the house." (Id. ¶ 9). Mr. Kersey went to his upstairs bedroom and closed the door before officers could interact with him. (Id. ¶ 10). Officer Ranseen and several other officers eventually went into the house, walked up the stairs, and stood outside Mr. Kersey's bedroom door to speak with him. (Id. ¶¶ 10–11). While Plaintiff maintains that Mr. Kersey was unarmed during this time, (id. ¶ 9), she also alleges that these officers heard Mr. Kersey threaten to "cut the throat of his roommate if [law enforcement] tried to enter into his bedroom," (id. ¶¶ 10).

The Complaint paints a picture that Officer Ranseen "kicked in the door to [Mr.] Kersey's bedroom," after which Mr. Kersey immediately "fell to the floor with his hands out to his sides," "was in a position of compliance," "never made any moves toward" *Officer Ranseen*, and "never made any aggressive move or maneuvers that would have threatened the life or safety of" any officer, and that Mr. Kersey's roommate "was not in a position to be harmed." (Id. ¶¶ 11–16). Officer Ranseen also had an unobstructed view "to see that [Mr. Kersey] was not holding his roommate hostage by using a knife," and that he did not have any "object in his hands that could have been mistaken for a knife." (Id. ¶¶ 18–20). Nevertheless, according to the Complaint, Officer Ranseen "immediately started shooting" and killed Mr. Kersey. (Id. ¶ 27).

The Court also reviewed the body camera footage of this incident. With particular focus on events where Officer Ranseen's body camera video clearly contradicted or utterly discredited the Complaint's allegations, the Court finds two. First, the video clearly contradicts the allegations that Mr. "Kersey was in a position of compliance when Officer Cole Ranseen kicked in the door to his bedroom." (Id. ¶ 13). The video clearly shows that Mr. Kersey was holding his roommate as a protective shield when the door was kicked in by Officer Ranseen and others. At that point, the life and safety of the roommate was compromised. Second, the video clearly contradicts the Complaint's allegations that when Ranseen and others "entered the room," they "knew or should

4

have known that [Mr. Kersey's] roommate was not in a position to be harmed." (Id. ¶ 16). As explained, Mr. Kersey used the roommate as a protective shield holding him between himself and law enforcement as they entered the room, so clearly his roommate was in a position to be harmed. In all other respects the Ranseen video is consistent with the Complaint or provides context for the allegations in the Complaint. Notably, the video confirms that Officer Ranseen had reason to believe that Mr. Kersey had a knife; that Officer Ranseen had a clear view of Mr. Kersey's empty hands without a knife or firearm; that in the five seconds after the door was kicked in both Mr. Kersey and the roommate were on the floor and separated from each other and that during the five seconds after entrance Mr. Kersey appeared compliant on the floor. It was at that point that Ranseen shot Mr. Kersey.

Plaintiff, as the administrator of Mr. Kersey's estate, sued Officer Ranseen (in his individual and official capacities), Metro, and five unnamed "John Doe" Officers[2] under § 1983. (Doc. No. 1). Plaintiff alleges use of excessive force by Officer Ranseen and the other officers in violation of the Fourth Amendment (Count 1), failure to train and supervise by Metro (Count 2), and failure to discipline by Metro (Count 3). (Id. ¶¶ 24–59). Plaintiff also brought Tennessee state law claims for assault, battery, and negligence against all Defendants (Count 4). (Id. ¶¶ 60–65). Officer Ranseen and Metro now move to dismiss all four counts for failure to state a claim under Rule 12(b)(6). (Doc. Nos. 22, 23). Officer Ranseen also raises qualified immunity as a defense against these claims. (Doc. No. 23 at 15).

## III. ANALYSIS

The Court will first address the claims against Metro before turning to the claims against Officer Ranseen.

---

[2] None of the John Doe Officers have been identified or served at this time.

A. Section 1983 Claims Against Metro (Counts 2 and 3)

Metro argues it is "entitled to dismissal of all claims" because the "Complaint fails to allege any facts sufficient to show Metro failed to train, supervise, or discipline its officers" to support a municipal liability claim under § 1983, and it "is immune from Plaintiff's assault, battery, and negligence claims because they arise out of the same factual allegations as her civil rights claims." (Doc. No. 23 at 11–17–21). Plaintiff did not respond to any of these arguments in her opposition brief. Nor did she even attempt to file a supplemental response after Defendants put her on notice that she likely "waived" her claims against Metro. (See Doc. No. 36 at 5). Under Local Rule 7.01(a)(3) and Sixth Circuit precedent, the Court concludes that Plaintiff does not oppose Metro's motion to dismiss because she does not refute any of its arguments for dismissal. L.R. 7.01(a)(3) ("If a timely response in opposition [to a motion to dismiss] is not filed, the motion shall be deemed to be unopposed."); Humphrey v. U.S. Att'y Gen.'s Off., 279 F. App'x 328, 331 (6th Cir. 2008) (holding that a plaintiff's failure to respond to an argument in defendant's motion to dismiss constitutes waiver); Scott v. State of Tenn., 878 F.2d 382, at *2 (6th Cir. 1989) (Table) (same).

Accordingly, the Court will grant Defendant's motion to dismiss all claims against Metro as unopposed.

B. Section 1983 Claim Against Officer Ranseen for Excessive Force (Count 1)

Officer Ranseen next moves to dismiss Plaintiff's § 1983 claim against him for excessive force. To survive dismissal on a § 1983 claim, Plaintiff must plausibly allege "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." Berger v. Mayfield Heights, 265 F.3d 399, 405 (6th Cir. 2001). It is not disputed that Officer Ranseen is a person "acting under the color of state law," so the only question is whether the Complaint sufficiently alleges he deprived Mr. Kersey of his Fourth Amendment right to be free from excessive force. (See Doc. No. 1 ¶ 23).

6

The normal Rule 12(b)(6) burden is somewhat flipped in this case because Officer Ranseen argues he is entitled to qualified immunity. (Doc. No. 28 at 8–10, 15–17). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Once raised, it is the plaintiff's burden to show that the defendants are not entitled to qualified immunity." Burgess v. Fischer, 735 F.3d 462, 472 (6th Cir. 2013) (citation omitted). To overcome the presumption of qualified immunity at the pleadings stage, the Complaint must plead facts showing that (1) the officer violated a federal statutory or constitutional right, and (2) the unlawfulness of the official's conduct was "clearly established at the time," such that every reasonable person in the official's position would have known that what he is doing violates that right. See Reed v. Campbell Cnty., 80 F.4th 734, 742 (6th Cir. 2023) (citations omitted); Kennedy v. Cincinnati, 595 F.3d 327, 336 (6th Cir. 2010); Enoch v. Hogan, 728 F. App'x 448, 452–53 (6th Cir. 2018).

The Sixth Circuit has held that "although qualified immunity is available at the motion to dismiss stage, it is generally inappropriate . . . to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." MacIntosh v. Clous, 69 F.4th 309, 315 (6th Cir. 2023) (citation and internal quotation marks omitted). "An officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest point," which "is usually summary judgment and not dismissal under Rule 12." Id. (citation and internal quotation marks omitted). "This is for good reason— development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." Id. (citation and internal quotation marks omitted).

Before engaging in the qualified immunity analysis below, the Court notes that Plaintiff sued Officer Ranseen in both his individual and official capacities. It is well settled that a claim against an officer "in his official capacity is the equivalent of a suit against the governmental entity." Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing Will v. Mich. Dept. of State Police, 491 U.S. 58, 68 (1989)); Cozart v. Spangler, 2023 WL 2992177, at *4 (M.D. Tenn. Apr. 18, 2023). This means that Plaintiff's § 1983 official capacity claim against Officer Ranseen is simply a claim against his employer, Metro. Given that the Court is dismissing Plaintiff's claims against Metro in Counts 2 and 3, it will also dismiss Plaintiff's § 1983 excessive force claim against Officer Ranseen in his *official* capacity.

The Court must now decide whether the Complaint plausibly alleges that Officer Ranseen, in his individual capacity, violated Mr. Kerney's constitutional rights and, if so, whether that right was clearly established.

1. Constitutional Violation

"The Fourth Amendment prohibits officers from using" excessive force, which is defined as "more force than is 'objectively reasonable' under the circumstances." Heeter v. Bowers, 99 F.4th 900, 912 (6th Cir. 2024) (citations omitted); see also Studdard v. Shelby Cnty., 934 F.3d 478, 481 (6th Cir. 2019) ("A seizure becomes unreasonable under the Fourth Amendment if the officer uses excessive force"). Where, as here, "an officer uses *deadly* force, that force is unreasonable unless 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" Palma v. Johns, 27 F.4th 419, 432 (6th Cir. 2022) (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985)). "When considering whether an officer reasonably believed that a person posed an immediate threat of serious bodily harm, courts must consider the totality of the circumstances." Id. Several nonexhaustive factors help guide this inquiry, including:

> (1) why the officer was called to the scene; (2) whether the officer knew or reasonably believed that the person was armed; (3) whether the person verbally or physically threatened the officer or disobeyed the officer; (4) how far the officer was from the person; (5) the duration of the entire encounter; (6) whether the officer knew of any ongoing mental or physical health conditions that may have affected the person's response to the officer; and (7) whether the officer could have diffused the situation with less forceful tactics.

Id. (citations omitted); see also id. at 440 (holding that "each of these factual considerations is distinct" and "none can be considered standing alone"). The Court examines these factors through the eyes of a reasonable officer and in the light most favorable to Plaintiff to answer the ultimate question presented here: whether the Complaint plausibly alleges that Mr. Kerney did *not* pose a serious immediate threat to others when Officer Ranseen killed him. See Jacobs v. Alam, 915 F.3d 1028, 1041 (6th Cir. 2019).

Starting with factors one (reason for police response) and two (presence of a weapon), the Court accepts that Officer Ranseen was called to the scene based initially on reports that Mr. Kersey was unarmed and "experiencing an emotional crisis because of his severe mental problems." (Doc. No. 1 ¶ 11). Plaintiff admits (and the video confirms) that Mr. Kersey later made violent threats that he would cut his roommate's throat if officers came into the room. (Doc. No. 23 at 9). These verbal threats and a bystander's statement that Mr. Kersey had a knife, (see Video at 01:25; 03:51), could have made it reasonable for Officer Ranseen to believe Mr. Kersey likely had a knife in his bedroom. But Mr. Kersey's verbal threats—made behind his closed bedroom door in a "manic" state—did not alone give Officer Ranseen probable cause to use deadly force. When Officer Ranseen kicked in the bedroom door with his gun drawn, he observed Mr. Kersey holding onto his roommate with both hands in what could be fairly described as an aggressive manner. (Video at 45:11). However, Mr. Kersey within five seconds fell "to the floor with his hands out to his sides" without any objects "that could have been mistaken for a knife."

(Doc. No. 1 ¶¶ 18, 20). The Court may infer that a reasonable officer viewing Mr. Kersey's hands and body language *after* he fell to the ground had no basis to believe Mr. Kersey had a firearm or knife that presented an imminent threat to justify using deadly force.

Factor three (disobedience and threatening behavior) also does not justify Officer Ranseen's use of deadly force. It is true that Mr. Kersey verbally threatened to injure his roommate when his door was closed, and Mr. Kersey had his hands wrapped around his roommate when officers first entered the room. However, after Mr. Kersey and his roommate fell to the ground with their hands exposed, he did not make any movements toward his roommate or any officers. In fact, the video shows that Mr. Kersey and his roommate were separated on the floor. It is plausible to infer that Officer Ranseen had time to see and react to Mr. Kersey laying on the floor with his hands out before he made the decision to shoot him. Indeed, "[w]hen a person does not act aggressively towards an officer, that fact undermines the officer's claim that the person presented an immediate threat of serious bodily harm." Palma, 27 F.4th at 434 (citing Stewart v. City of Euclid, 970 F.3d 667, 673–74 (6th Cir. 2020)) (internal quotation marks and alterations omitted).

Factors four (distance between the officer and the person) and five (duration of the encounter) are more neutral, but they ultimately weigh in favor of finding that Officer Ranseen acted unreasonably. Accepting the Complaint's allegations as true, Mr. Kerney was on the ground, did not have a knife or firearm, and was not actively trying to harm his roommate when Officer Ranseen shot him. At that point, when Mr. Kerney was on the ground, it was unlikely that Officer Ranseen was "afraid of a hand-to-hand confrontation" between Mr. Kerney and anyone else in the room. See id. at 435–36. Likewise, even if the encounter lasted only five seconds between when Officer Ranseen entered the room and shot Mr. Kersey, it is plausible that Officer Ranseen had

10
Case 3:24-cv-01198    Document 40    Filed 09/12/25    Page 10 of 15 PageID #: 153

enough time to assess the situation and confirm that Mr. Kersey did not present an "*immediate* threat" on the floor.  Id.

Factor six (mental health conditions) is critically important here, particularly because the Court may infer that Officer Ranseen knew, or should have realized, that Mr. Kersey was suffering from a mental health crisis when he arrived at the house.  "[O]nly in extreme cases" has the Sixth Circuit "found that an officer reasonably used lethal force against a mentally ill person," and those cases almost always involved "a mentally ill person who was *armed* and *threatening* officers." Palma, 27 F.4th at 437.  As the Court previously explained, it is plausible that Mr. Kersey was neither armed nor threatening when Officer Ranseen shot him.  This factor therefore weighs heavily in Plaintiff's favor because the Sixth Circuit has "never held that *shooting* a mentally ill person was reasonable when the officers had little reason to suspect that the person was armed." Id. at 438.

Last, factor seven (readily available alternatives) clearly weighs in Plaintiff's favor.  Officer Ranseen unholstered and drew his gun before opening the bedroom door, and there is nothing in the Complaint or the video to suggest that he first considered a nonlethal alternative, such as handcuffs or a taser.  Mr. Kersey also was suffering from a mental crisis, and the Sixth Circuit has held that whether an officer considered nonlethal alternatives to deadly force "is particularly important in cases involving mental health crises, where officers should use the least force necessary to subdue the person."  Palma, 27 F.4th at 439.  The Court may infer that Officer Ranseen "immediately" shot Mr. Kersey "without provocation," which would not have been reasonable under the circumstances.

For all these reasons, the Court finds that the allegations in the Complaint, viewed in the light most favorable to Plaintiff, plausibly suggest that Officer Ranseen's used excessive force.

Once Mr. Kersey was on the floor with both hands to the side and clearly exposed and empty, Officer Ranseen could have verified that he was unarmed and did not present a "threat of serious physical harm, either to the officer or to others.'" Palma, 27 F.4th at 432. Sure, the video footage suggests that Mr. Kersey was acting aggressively towards his roommate *before* they both fell to the ground, but the circumstances changed once both men were laying on the floor and separate from each other. At that point, it is plausible that Officer Ranseen's use of deadly force was unreasonable. That is enough to survive dismissal.

For clarity, the Court will summarize its conclusions on Officer Ranseen assertion of qualified immunity. The Court concludes that when it relies solely on the Complaint without consideration of Officer Ranseen's body cam video, it does not find that Officer Ranseen is entitled to qualified immunity because the Complaint plausibly alleges facts that Officer Ranseen engaged in excessive force when he fatally shot Mr. Kersey. Alternatively, the Court would reach the same conclusion if it relied upon the Complaint and Officer Ranseen's video. That the video clearly contradicts the Complaint in the two respects noted does not compel a different result.

Again, for clarity, the Court emphasizes that it is not concluding that Officer Ranseen did, in fact, use excessive force or violate Mr. Kersey's constitutional rights. It is merely holding that the Complaint's allegations alone or together with the video make it *plausible* that Officer Ranseen did so. To be sure, Officer Ranseen may ultimately prevail on this issue on summary judgment or at trial (where he will have the benefit of discovery, a different burden of proof, and a more substantial factual record) by showing that he used objectively reasonable force under the circumstances. There, the Court will also be able to rely on deposition testimony, affidavits, and other evidence to resolve factual disputes about whether Mr. Kersey was "aggressively assaulting his roommate" when they fell to the ground, or whether "Mr. Kersey's hands were wrapped around

his" roommate at the time of the shooting. (See Doc. No. 23 at 5). For now, the Court finds that Plaintiff plausibly alleged that Officer Ranseen violated Mr. Kersey's Fourth Amendment right to be free from excessive force.

### 2. Clearly Established Law

Given that the Complaint sufficiently alleges Officer Ranseen used excessive force, qualified immunity will not shield him from this lawsuit if Mr. Kersey's rights were "clearly established." A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Allen v. Lo, 751 F. Supp. 3d 863, 881 (M.D. Tenn. 2024) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). This means that officers cannot rely on qualified immunity when, "on an objective basis, it is obvious that no reasonably competent officer would have acted in the same manner[.]" Id. (citations and alterations omitted).

"[I]t is axiomatic that individuals have a clearly established right not to be shot absent probable cause to believe that they pose a threat of serious physical harm." Woodcock v. City of Bowling Green, 679 F. App'x 419, 423 (6th Cir. 2017) (quoting Mullins v. Cyranek, 805 F.3d 760, 765 (6th Cir. 2015)). Moreover, the Court may infer that Officer Ranseen had conflicting information about whether Mr. Kersey had a knife, and "officers cannot shoot based on a 'mere hunch' that the person might be armed." Palma, 27 F.4th at 443 (citation omitted). Officer Ranseen also knew Mr. Kersey had severe mental problems, and officers "responding to mental health calls . . . must take into account the person's mental status when assessing the situation." Id. By shooting Mr. Kersey under these circumstances, it is at least plausible that Officer Ranseen's use of deadly force violated a clearly established constitutional right. See id. (collecting cases that "found that lethal force was unreasonable even when officers faced objectively *more* threatening circumstances" than here). Therefore, dismissal or qualified immunity grounds is in appropriate.

### C. Tennessee Law Claims Against Officer Ranseen for Assault, Battery, and Negligence (Count 4)

Count 4 of the Complaint asserts Tennessee law claims against Officer Ranseen, individually and in his official capacity, alleging that he "committed battery and assault on [Mr.] Kersey when he was lying on the floor in a supine position without showing any aggression toward [him] and without any provocation." (Doc. No. 1 ¶ 61). It further alleges that Officer Ranseen was "negligent and careless in shooting [Mr.] Kersey when he presented no threat to [Officer Ranseen] or harm to any other person." (Id. ¶ 62). Officer Ranseen moves to dismiss these claims because they are based on the same underlying events as Plaintiff's § 1983 excessive-force claim, and his "use of force was lawful and not excessive." (Doc. No. 23 at 11).

For the same reasons that the Complaint plausibly alleges that Officer Ranseen in his individual capacity used excessive force, the Court finds that the Complaint plausibly alleges that Officer Ranseen used a degree of force that constituted assault, battery, or negligence under Tennessee law.[3] At the very least, it is not clear from the video whether "Mr. Kersey was aggressively assaulting his roommate" (as Officer Ranseen argues), (see Doc. No. 23 at 5), or whether Mr. Kersey immediately got into a position of compliance (as the Complaint alleges). The Court must therefore accept Plaintiff's version of events as true for now. The Court also finds that Officer Ranseen is not entitled to Tennessee qualified immunity at this time because the act of shooting someone is, at the very least, "a clearly established state tort violation." See Allen, 751

---

[3] In Tennessee, a "battery is any unlawful beating, or other wrongful physical violence or constraint, inflicted on a human being without his consent." Alexander v. Beale Street Blues Co., Inc., 108 F. Supp. 2d 934, 946 (W.D. Tenn. Mar. 19, 1999) (quoting Rushing v. State, 268 S.W.2d 563, 567 (Tenn. 1954)). An assault occurs "if a defendant intends to create an apprehension of harm in the plaintiff." Hughes v. Metro. Gov't of Nashville, 340 S.W.3d 352, 371 (Tenn. 2011). And the elements of a Tennessee negligence claim are: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause." West v. E. Tenn. Pioneer Oil Co., 172 S.W.3d 545, 550 (Tenn. 2005).

F. Supp. 3d at 881 (quoting Hammond-Bevile v. Landis, 2022 WL 910569, at *5 (6th Cir. Mar. 29, 2022)). Unlike Metro, Officer Ranseen does not argue whether or to what extent the Tennessee Governmental Tort Liability Act applies to the individual capacity claims against him, so the Court need not address that issue now. The Court will, however, dismiss Plaintiff's Tennessee law claims against Officer Ranseen in his *official* capacity because those claims are directed at Metro, who has now been dismissed from the case.

IV. **CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss. (Doc. No. 22). The Court will dismiss the claims against Metro and the official capacity claims against Officer Ranseen, but it will deny the Motion in all other respects.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE